UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK DAVID SANDERSFIELD III,

           Plaintiff,           Case No. 20-10740
                                         Honorable David M. Lawson
v.                                      Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 15)**

Plaintiff Jack David Sandersfield III ("Sandersfield") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 13, 15) and Sandersfield filed a reply (ECF No. 16). The Honorable David M. Lawson referred these motions to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **GRANTED**, Sandersfield's Motion for Summary Judgment (**ECF No. 13**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

**II.     REPORT**

    **A.     Background**

Sandersfield applied for supplemental security income three times before filing the application in March of 2017 that is now at issue. (PageID.166, 192, 219.) Sandersfield was 40 years old at the time of this application, and at 5'11'' weighed approximately 376 pounds. (PageID.142; PageID.247.) He is a high school graduate with some college courses completed, but no degree. (PageID.142.) Sandersfield has never worked. (PageID.355.) Sandersfield's alleged disabling conditions include: learning disability; neck and lumbar disabilities; speech disability; an enlarged heart; sleep apnea; and diabetes. (*Id.*)

On March 13, 2017, Sandersfield filed an application for SSI benefits, alleging disability beginning on November 6, 2000.[1] (PageID.330.) The Social Security Administration denied Sandersfield's application on May 15, 2017. (PageID.261.) Sandersfield filed a timely request for an administrative hearing, which was held on October 25, 2018, before ALJ Manh H. Nguyen. (PageID.137.) Sandersfield, who was represented by attorney John Morosi, testified at the hearing as did vocational expert ("VE") Michelle Ross. (*Id.*) On December 26, 2018, the ALJ issued a written decision finding Sandersfield not disabled. (PageID.120-36.) On February 5, 2020, the Appeals Council denied review. (PageID.41.) Sandersfield filed for judicial review of the final decision on March 19, 2020. (ECF No. 1.)

    **B.     Framework for Disability Determinations**

Under the Act, SSI are available only for those who have a "disability." *See Colvin v.*

---

[1] The ALJ noted in his decision that Sandersfield "amended his alleged onset date to March 13, 2017. However, I have considered the period beginning with February 13, 2017 because that is his protective filing date." (PageID.123.) Thereafter, all parties seemed to have adopted the February 13, 2017 date, though, for the reasons discussed below, the difference is immaterial to this Court's recommendation. (ECF Nos. 13, 15, 16.)

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    **C.**    **The ALJ's Findings**

At Step One, the ALJ found that Sandersfield had not engaged in substantial gainful

activity since February 13, 2017. (PageID.125.) At Step Two, the ALJ found that Sandersfield had the following severe impairments: "cervical spondylosis, herniation of the lumbar spine, osteoarthritis and tendinosis of the left shoulder, acquired keratosis, venous insufficiency, right metatarsalgia, tinea unguium, diabetic polyneuropathy, diabetes mellitus, insomnia, obstructive sleep apnea, obesity, learning disorder, and speech impairment." (PageID.125.) At Step Three, the ALJ found that Sandersfield's impairments did not meet or medically equal one of the impairments listed in the regulations. (PageID.126-27.)

The ALJ then assessed Sandersfield's residual functional capacity ("RFC"), concluding that Sandersfield was capable of performing light work as defined by 20 C.F.R. § 416.967(b) with the following exceptions:

> [H]e can never climb ladders, ropes, or scaffolds. He can never kneel or crawl. The claimant can occasionally climb ramps and stairs. He can frequently balance, stoop, and crouch. He can never reach overhead with the left dominant arm. He can occasionally reach in all other directions, handle, and finger with the left dominant hand. The claimant can never perform commercial driving or operate moving machinery. He can never work around hazards such as unprotected heights or unguarded/uncovered moving machinery. He can understand, remember, and carry out simple instructions. He can never work at production rate pace that requires hourly quotas. He can occasionally interact with the general public.

(PageID.127.)

At Step Four, the ALJ found that Sandersfield had no past relevant work. (PageID.131.) At Step Five, the ALJ stated, based in part on the VE's testimony, that Sandersfield was capable of performing a significant number of jobs in the national economy including machine tender and line attendant. (PageID.132.) As a result, the ALJ concluded that Sandersfield was not disabled under the Act. (*Id*.)

    **D.**     **Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative

decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must

be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### E.   Analysis

Sandersfield first argues that ALJ Nguyen's determination that he had the RFC to perform light work (with other limitations) is not supported by substantial evidence. (PageID.700.) Sandersfield states that a *light* work RFC is "inconsistent with the evidence of record and the earlier [October 12, 2016] decision of ALJ [Laura] Chess," in which ALJ Chess determined that he had the RFC to perform *sedentary* work (with other limitations). (*Id.*; PageID.225.) Second, Sandersfield argues that the ALJ erred by relying on state agency opinions that were referenced in the Disability Determination Explanation. (PageID.705-06.)

The Commissioner responds by pointing out that the time frame at issue for Sandersfield's current application is February 13, 2017 through December 26, 2018, and that many of Sandersfield's citations to prior record evidence are not relevant.[2] (PageID.713.) The Commissioner argues that substantial evidence supports the ALJ's physical and mental RFCs. (*Id.* at PageID.721-37.) As to Sandersfield's second argument, the Commissioner notes that an ALJ is allowed to rely on state agency opinions that are a part of the Disability Determination Explanations. (*Id.* at PageID.729.)

The Court has thoroughly reviewed the transcript, including Sandersfield's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. The Court will make references and provide citations to the transcript as necessary in its discussion of

---

[2] This represents the time from the application date through the decision of the ALJ. *See Casey v. Sec. of Health and Human Serv.*, 987 F.2d 1230, (6th 1993)("The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date.").

the parties' arguments.

### 1. Substantial Evidence Supports the ALJ's Physical RFC

A claimant's RFC is defined as "the maximum degree to which [she] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(c).[3] "In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions." *Eslinger v. Comm'r of Soc. Sec.*, 476 Fed.Appx. 618, 621 (6th Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(3)). The ALJ must also take into consideration "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

As stated above, Sandersfield's main argument is that the ALJ's RFC for light work is not supported by substantial evidence because ALJ Chess previously found that he could only perform sedentary work and the record does not demonstrate improvement that would account for the less restrictive RFC. (PageID.691, 700-05.) Until recently, cases where a claimant previously filed applications for benefits were governed by the Sixth Circuit's decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837, 842 (6th Cir. 1997). *Drummond* relied on *res judicata* principles to hold that a prior ALJ's findings were binding on the subsequent ALJ considering a subsequent claim, "[a]bsent evidence of an improvement in a claimant's condition." *Id*. The Agency acquiesced to this ruling for cases arising within the Sixth Circuit even though

---

[3] *See also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").

existing Agency policy directed ALJs to consider the evidence in a new claim de novo. *See* Acquiescence Ruling 98-4(6), 1998 WL 274052 (June 1, 1998).

In 2018, however, the Sixth Circuit decided that *Drummond's* holding was an "overstatement," and modified it in *Earley v. Commissioner of Social Security*, 893 F.3d 929, 933 (6th Cir. 2018). The *Earley* court held, contrary to *Drummond*, that *res judicata* does not apply to a prior ALJ's findings when a different time period is at issue, and that therefore, those findings are not binding on subsequent ALJ decisions regarding a later time period. *Id*. At the same time, the Sixth Circuit declined to hold that such findings are irrelevant. *Id*. at 934. Rather, the court held, "absent new and additional evidence, the first [ALJ's] findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id*. at 933.

In his reply, Sandersfield points out that the ALJ cited the standard in *Drummond*, rather than the standard in *Earley*. (ECF No. 16, PageID.741.) The Commissioner, anticipating this argument, counters that, despite citing *Drummond*, ALJ Nguyen appropriately considered Sandersfield's March 2017 application "a new application for a new period of time," entitled to review on its own merits, in accordance with *Earley*. (ECF No. 15, PageID.730.)

First, early on in ALJ Nguyen's decision, he recognized the prior ALJ's decision, but noted that "new evidence and changes in policy support a change in findings." (PageID.123.)[4] The ALJ then provided a thorough discussion of the record evidence which supports the RFC he determined. Sandersfield did not undergo any specific treatment for his back or neck pain during the relevant period from February of 2017 through December 26, 2018, nor did he obtain any imaging of his

---

[4] Although the ALJ failed to explicitly reference the *Earley* decision, this portion of the ALJ's decision, coupled with the rest of his analysis, shows he did not violate that recent case's teachings. Indeed, later in the ALJ's decision when discussing Sandersfield's mental limitations, he makes a specific reference to the consistency of his decision "with the prior ALJ's findings . . ." (PageID.129.)

8

lumbar spine during that period.  (PageID.128-29, 247-260, 450-679.)  A December 2017 cervical spine MRI showed only mild to moderate spondylosis without fracture, subluxation, or discernible osseous spinal stenosis, and stable post-surgical changes with good alignment.  (PageID.129, 577.)  Moreover, Sandersfield's primary-care provider, Nurse Practitioner Beth Weaver, did not document any remarkable examination findings, apart from some reduced range of motion of the spine on two occasions.  (PageID.130, 497, 500, 596.)  ALJ Nguyen accounted for this by adding postural limitations to the physical RFC.  (PageID.127.)

Prior to the filing of this application, Sandersfield sustained a shoulder injury while removing lugnuts from a tire.  (PageID.128, 458.)  A July 2016 MRI showed severe tendinosis of the supraspinatus tendon and mild osteoarthritis of the acromioclavicular joint.  (PageID.458-59.)  Sandersfield started taking Tramadol (Ultram) for his pain around this time, but the record did not reflect that he took any pain medication after his alleged onset date.  (PageID.128, 130, 487, 499-506, 546-97.)  Moreover, the ALJ noted that while Nurse Practitioner Weaver referred Sandersfield to a shoulder specialist in October 2016 and July 2017, there is no record that he followed through with those recommendations.  (PageID.128-29, 488-89, 561-62.)  In addition, Sandersfield did not obtain other treatment for his shoulder pain, such as physical therapy or injections.  (PageID.129, 450-679.)  ALJ Nguyen accounted for Sandersfield's left shoulder impairment by prohibiting all overhead reaching on that side, and limiting him to occasional reaching in other directions. (PageID.127.)

ALJ Nguyen also considered how Sandersfield's other impairments –keratosis, venous insufficiency, right metatarsalgia, tinea unguium, and diabetic polyneuropathy – affected his lower extremity functioning.  (PageID.129.)  These impairments resulted in corns, calluses, and painful toenails.  (PageID.129, 450-54, 613-22, 666-79.)  Sandersfield received treatment for these

9

symptoms in the form of periodic debridement of his toes and topical antifungal creams, and he acknowledged that these treatments allowed him to ambulate pain-free. (PageID.450, 453-54, 614, 620, 622.) As such, the ALJ's decision not to incorporate walking limitations into the RFC is supported by substantial evidence.

ALJ Nguyen also considered Sandersfield's activities. (PageID.130.) These included: (1) using an electric impact gun to remove lugnuts from a tire; (2) spending an entire day stacking wood for a friend (three or four cords, each of which was four feet tall by eight feet wide); and (3) changing a muffler on a friend's truck. (PageID.130, 152-53, 467, 586[5], 643.) The ALJ reasoned that, even though Sandersfield reported that he was "very sore" after stacking the wood, this activity showed that he was "capable of performing relatively heavy work for one entire day," which, considered in conjunction with the limited objective evidence, "suggest[ed] that he [was] capable of sustaining light exertional activity." (PageID.130.) In short, the ALJ evenly considered this meaningful evidence from the relevant period, and it supports his decision to adopt a light-work RFC notwithstanding that ALJ Chess had previously adopted a sedentary one.

ALJ Nguyen also considered the opinion of the state agency physician, Dr. Jennie Wentzloff. (PageID.253-56.) "An ALJ is permitted to rely on state agency physicians' opinions to the same extent as he may rely on opinions from other sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015). Indeed, opinions from non-examining state agency consultants "may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 12-2219, 2013 WL 5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§

---

[5] This medical record indicates that Sandersfield reported he had "been doing alot [sic] of wood stacking." (PageID.586.)

404.1527(e)(2)(i), 416.927(e)(2)(i)). "'In appropriate circumstances, opinions from State agency medical and psychological consultants … may be entitled to greater weight than the opinions of treating or examining sources.'" *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). This is especially so when there is no other opinion evidence in the record. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

In May of 2017, Dr. Wentzloff reviewed the record and concluded that Sandersfield could perform light work; could frequently climb ramps and stairs, and occasionally climb ladders, ropes, and scaffolds; could frequently reach with his left arm; and needed to avoid concentrated exposure to hazards. (PageID.254-56.) The ALJ gave significant weight to Dr. Wentzloff's opinion that Sandersfield could perform light work, but found that the record justified greater postural, environmental, and manipulative limitations. (PageID.130.) In particular, the ALJ found that the "combination of his obesity and multiple impairments [a]ffecting his feet further limit his postural and environmental abilities"; accordingly, the ALJ prohibited any kneeling or crawling; limited the frequency of Sandersfield's balancing, stooping, and crouching; and prohibited all exposure to hazards. (PageID.127, 130.) The ALJ's partial reliance on Dr. Wentzloff's opinion was appropriate and adds to the Court's finding that substantial evidence supports the ALJ's RFC assessment – particularly where, as here, there is no conflicting opinion in the record. *See Watts v. Comm'r of Soc. Sec.*, 179 F. App'x 290, 294 (6th Cir. 2006)(state agency reviewers' opinions were the "best evidence" in the record where "none of [claimant's] treating doctors during the relevant period . . . made detailed functional capacity analyses"); *accord Hunter ex rel. Hunter v. Sec'y of Health & Human Servs.*, No. 94-5383, 1995 WL 149105, at *1 (6th Cir. Apr. 4, 1995).

Sandersfield brings several other challenges to the ALJ's RFC. For example, Sandersfield

faults ALJ Nguyen for not assessing any limitations relating to his right shoulder. (PageID.705.) He points to the fact that he reported pain in that shoulder after stacking wood. (PageID.586-87.) And, it is true that Nurse Practitioner Weaver noted limited range of motion in the right shoulder at the time. (*Id*.) However, an X-ray performed shortly thereafter was negative for any impairment. (PageID.587, 589, 596.) On the whole, between the negative X-ray, the mere fact that Sandersfield was able to work all day (even if on only one occasion) stacking wood and another day changing a muffler, the absence of any further records of right shoulder treatment during the relevant period, and the opinion of Dr. Wentzloff, the Court finds that substantial evidence supports this aspect of the ALJ's decision. *Cutlip*, 25 F.3d at 286.

Sandersfield also points out that the ALJ stated that he "treated exclusively" with Nurse Practitioner Weaver. (PageID.704.) He claims this is not accurate considering he has had multiple MRIs, consultations with other medical sources, and surgeries dating back to 2000. (PageID.703-04). However, none of that evidence is from the period at issue in this claim, and it appears the ALJ was simply referring to that general time period because in the same paragraph of his decision he noted that Nurse Practitioner Weaver had referred Sandersfield to specialists in late 2016 and again in July 2017, but that Sandersfield did not follow-up. (PageID.128-29, 450-679.) In addition, ALJ Nguyen was clearly aware of the prior decision which discusses records from his other prior treaters. (PageID.123, 129, 227-28.) As such, the isolated statement raised by Sandersfield does not merit remand.

Additionally, Sandersfield asserts that the ALJ's "reasoning behind the 'consideration' of his obesity is not cogently stated leaving the parties and this Court to speculate as to exactly what the ALJ considered." (PageID.694). This argument lacks merit. ALJs are not required to follow any "particular mode of analysis" when evaluating obesity. *Nejat v. Comm'r of Soc. Sec.*, 359 F.

App'x 574, 577 (6th Cir. 2009). Here, the ALJ specifically considered Sandersfield's body mass index of 46 to 51.6. (PageID.129.) In addition, he cited Sandersfield's obesity as a reason for assessing greater postural and environmental limitations than the state agency physician. (PageID.127, 130.) And, the ALJ was aware that despite his obesity, Sandersfield was able to perform the activities discussed above. As such, this aspect of the ALJ's RFC is supported by substantial evidence.

Last, Sandersfield argues that the ALJ incorrectly found that his hypertension had "evaporated." (PageID.704-05.) In January of 2017, Sandersfield had an appointment with Nurse Practitioner Weaver wherein he expressed issues with dizziness. (PageID.496-98.) Weaver encouraged him to continue taking his blood pressure medication. (*Id*.) This record is from one month before his alleged onset date, and there are no similar records during the relevant period. (PageID.496-98.) Nor does Sandersfield point to any physician-imposed limitation that the ALJ failed to incorporate into the RFC based on hypertension. Sandersfield thus falls short of showing that the record compels any hypertension-related limitations.

For all of the above reasons, ALJ Nguyen's physical RFC assessment is supported by substantial evidence.

2. *Substantial Evidence Supports the ALJ's Mental RFC*

Sandersfield next argues that his learning disorder and speech impediment pose significant obstacles to gainful work. (PageID.692.) "In assessing RFC with impairments affecting hearing or speech, the adjudicator must explain how the individual's limitations would affect his or her ability to communicate in the workplace." *See* 1996 WL374184, at *6

Sandersfield did not seek treatment for his learning disorder or speech impairment during the relevant period. (PageID.450-679.) As such, the ALJ relied on the state agency opinion

13

regarding mental impairments from Dr. Barbara Jones Smith. (PageID.130, 256-58.) Dr. Jones Smith found that Sandersfield had moderate limitations in carrying out detailed instructions, moderate limitations in performing at a consistent pace, and moderate limitations in adapting to changes in the work place. (PageID.256-58.) Dr. Jones Smith also stated that the field office interviewer noted that Sandersfield had difficulty speaking, yet did not perceive any problem with coherency, and in fact, stated that he "answered all questions without issue." (PageID.352.) In addition, Dr. Jones Smith stated that Sandersfield's lisping was a lifelong issue. (*Id*.) However, he had nevertheless been able to complete high school and a year and a half of college. (*Id*.) Dr. Jones Smith also noted that Sandersfield could shop in stores, follow instructions, and interact with family and friends. (PageID.258.)

The ALJ also considered Sandersfield's testimony that he had difficulty making himself understood, especially when he felt frustrated, and that he sometimes became angry when people asked him to repeat himself. (PageID.129, 151-52, 155.) At the same time, the ALJ found no evidence in Sandersfield's relevant medical records indicating that he was unable to communicate effectively with any of his medical providers. (PageID.129.) However, he found, consistent with ALJ's Chess's decision, that Sandersfield had "some social impairment related to his speech impairment." (PageID.129-30, 224, 230.) Thus, ALJ Nguyen ultimately assessed moderate limitations in interacting with others. (PageID.127.) In addition, the ALJ limited him to understanding, remembering, and carrying out simple instructions. (PageID.127, 130.) ALJ Nguyen also included a prohibition against jobs involving a production rate pace or hourly quotas, to account for Sandersfield's self-described concentration difficulties. (PageID.127; 379.) ALJ Nguyen limited Sandersfield to occasional contact with the general public in response to Sandersfield's concerns about his ability to be understood, and confirmed with the vocational

14

expert that the same jobs would be available even if he could not interact at all with the general public, and could interact only occasionally with co-workers and supervisors. (PageID.127, 160).

Sanderson faults ALJ Nguyen for never stating outright "whether he, himself was able to effectively understand the Plaintiff." (PageID.694.) However, Sandersfield fails to provide any compelling evidence that the ALJ was not, in fact, able to understand him. (*Id*.) The hearing transcript contains only a few instances where Sandersfield's recorded responses suggest he (Sandersfield) either didn't understand the question or wasn't able to effectively communicate his answer. (PageID.142, 144.) On the other hand, the hearing transcript shows that Sandersfield answered the vast majority of the ALJ's questions without issue. And, as the ALJ noted, "there is no evidence in the medical record that he was unable to communicate effectively with medical providers." (PageID.129.) Sandersfield also faults ALJ Nguyen for not following ALJ Chess's speech-related limitations precisely. This challenge is unavailing. *Under Earley*, the ALJ was required to give the record a "fresh review," and the foregoing shows that the ALJ did just that. *Earley*, supra at 934. For all of these reasons, this aspect of the ALJ's RFC determination is supported by substantial evidence.

In sum, substantial evidence supports ALJ Nguyen's evaluation of Sandersfield's learning disorder and speech impairment, and concomitant mental RFC assessment.

> 3. *ALJ Nguyen Appropriately Relied on the State Agency Physicians' Opinions contained in the Disability Determination Explanation*

Sandersfield challenges ALJ Nguyen's reliance on Dr. Wentzloff's and Dr. Barbara Jones Smith's opinions. Specifically, in his summary judgment motion, Sandersfield argued that the "actual opinions of State Agency Evaluator Jennie Wentzloff, M.D. (May, 2017) and that of State Agency Psychological Consultant Barbara Jones Smith, Ph.D. (May 2017) relied upon by the ALJ in his decision are not part of the record, but rather [are] simply referenced in the disability

determination explanation." (ECF No. 13, PageID.705-06.) The ALJ gave "significant weight" to both Wentzloff's opinion that Sandersfield could perform light work and to Smith's opinion that Sandersfield could perform simple tasks. (PageID.130, 254-56.)[6] Sandersfield claims that, "careful review of the record reveals the 'opinions' are simply excerpts pasted into the Disability Determination Explanation found at ECF No. 10-3, PageID.248. It is impossible to fully evaluate the findings of the consultants based upon the cryptic comments in the DDS explanation." (ECF No. 13, PageID.706.) After the Commissioner responded to that argument by citing a case which, as discussed below, squarely rebuts Sandersfield's argument, he offered a different one in his reply brief: ". . . Plaintiff argues the opinions of the consultants recorded in the Disability Determination Explanation are essentially unintelligible." (ECF No. 16, PageID.744) (citing PageID.248.) Either way, Sandersfield's arguments lack merit.

The Commissioner is correct that *Burton v. Berryhill*, No. 3:16-cv-240, 2018 WL 327763, at *6 n.3 (E.D. Tenn. Jan. 8, 2018), eviscerates Sandersfield's first argument. Indeed, the Sixth Circuit flatly rejected the claimant's argument that the Disability Determination Explanations "do not actually contain" the state agency physician opinions. *Burton*, at *6 n.3. The court explained that within each Disability Determination Explanation there are two sections by each contributing state agency physician. *Id*. One section contains the review of the medical records by the state agency physician. *Id*. The other section contains a "Residual Functional Capacity" opinion by the state agency physician. *Id*. Both sections are signed. *Id*. As such, the court held that an ALJ may rely on the contents of these sections and the opinions expressed in them in determining the

---

[6] However, the ALJ did not adopt each doctor's opinion wholesale, because he found that certain other aspects of their respective opinions failed to fully account for Sandersfield's limitations. (PageID.130.) The ALJ addressed those perceived shortcomings by imposing RFC limitations that were more restrictive than what either of the two doctors had determined. (*Id.*)

16

claimant's RFC. *Id.* Thus, under *Burton*, there was nothing improper about ALJ Nguyen relying on the opinions of Dr. Wentzloff and Dr. Jones Smith in determining Sandersfield's RFC.

Nor was there anything "unintelligible" about the opinions in question. Rather, they reference specific aspects of the medical records and then offer opinions as to the limitations that those records show to be warranted. (PageID.247-258.) Again, there was nothing improper about the ALJ relying on these opinions in fashioning the RFC in this case. *Burton*, at *6 n.3.

4. *Substantial Evidence Supports the ALJ's Step Five Analysis*

Sandersfield's Step Five challenge is derivative of his RFC challenge. Specifically, Sandersfield argues that because the ALJ's RFC was flawed, the VE's responsive testimony about the jobs available to a person with that RFC cannot provide substantial evidence for the ALJ's Step Five determination. This argument lacks merit.

"'[S]ubstantial evidence' may be in the form of [VE] testimony in response to a hypothetical question, 'but only 'if the question accurately portrays [the claimant's] individual . . . impairments.'" *Vandenboss v. Comm'r of Soc. Sec.*, No. 14-12283-DT, 2015 WL 3823558, at *3 (E.D. Mich. June 18, 2015) (internal citations omitted); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001). In other words, if an ALJ uses VE testimony as substantial evidence to support his decision, he must present an accurate assessment of what the claimant "can and cannot do" in his questions to the VE. *Webb v. Comm'r Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). "[T]he ALJ is required to incorporate only those limitations that he accepts as credible." *Phillips v. Comm'r of Soc. Sec.*, No. 13-cv-02590, 2014 WL 4302503, at *21 (N.D. Ohio Aug. 28, 2014) (citing *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x. 425, 429 (6th Cir. 2007)).

As detailed above, substantial evidence supports the ALJ's RFC. And, since the VE

testified to a hypothetical that tracked that RFC (PageID.158-159), the VE's testimony about the availability of jobs in the national economy provides substantial evidence for the ALJ's Step Five determination. *See Vandenboss, supra.*

### III. CONCLUSION

For the reasons set forth above, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 15**) be **GRANTED**, Sandersfield's Motion for Summary Judgment (**ECF No. 13**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

Dated: April 9, 2021             s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
                                             United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 9, 2021.

                                      s/Eddrey Butts
                                      EDDREY BUTTS
                                      Case Manager